EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Elena González Méndez <br><br>    Recurrida <br><br><br>       v. <br><br> Acción Social de Puerto Rico, Centro de Envejecientes Manantial de Vida; Aseguradora X, Fulana de Tal y Sutano de Tal <br><br>    Peticionario | Certiorari <br><br> 2016 TSPR 180 <br><br> 196 DPR ____ |

Número del Caso: CC-2014-679

Fecha: 8 de agosto de 2016

Tribunal de Apelaciones:

    Región Judicial de Mayagüez, Aguadilla y Aibonito, Panel X

Abogados de la Parte Peticionaria:

    Lcdo. Rafael E. Aguiló Vélez
    Lcdo. Daniel Quiles Pumarejo

Abogado de la Parte Recurrida:

    Lcdo. Carlos J. Rivera Ruiz

Materia: Derecho Laboral y Procedimiento Civil- La Ley contra la discriminación por edad en el empleo de 1967, Age Discrimination in Employment Act, requiere que se presente un cargo ante la Equal Employment Opportunity Commission o ante la Unidad Anti-discrimen del Departamento de Trabajo y Recursos Humanos, previo a incoar en nuestra jurisdicción una acción judicial a su amparo. Escrutinio para interpretar una moción de desestimación conforme la Regla 10.2 de Procedimiento Civil.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Elena González Méndez

    Recurrida

       v.                          CC-2014-679      Certiorari

Acción Social de Puerto Rico,
Centro de Envejecientes Manantial
de Vida; Aseguradora X, Fulano de
Tal y Sutano de Tal

    Peticionarios

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 8 de agosto de 2016.

La presente controversia jurídica gira en torno a un alegado despido injustificado y discriminatorio por razón de edad. Específicamente, debemos determinar, como cuestión de umbral, si la Ley contra la discriminación por edad en el empleo de 1967, conocida como *Age Discrimination in Employment Act*, *infra*, requiere que se presente un cargo ante la *Equal Employment Opportunity Commission* o ante la Unidad Anti-discrimen del Departamento del Trabajo y Recursos Humanos previo a incoar en nuestra jurisdicción una acción judicial a su amparo.

Trabada la controversia, examinemos primeramente el cuadro fáctico y procesal que originó la polémica ante nos.

## I

Este caso se remonta al 5 de diciembre de 2013, cuando la Sra. Elena González Méndez (señora González Méndez) incoó una *Querella*[1] ante el Tribunal de Primera Instancia contra Acción Social de Puerto Rico, Inc. (Acción Social).[2] En síntesis, expresó que trabajó como oficinista en Acción Social por aproximadamente 20 años ininterrumpidos. Manifestó que laboró hasta junio de 2011, toda vez que el centro donde ejercía sus funciones cerró por razón de remodelación. Señaló que, al momento del cierre, Acción Social se comprometió a devolverle el empleo, una vez finalizaran las obras y se reiniciaran las labores del centro. Adujo que el 26 de octubre de 2012, Acción Social reabrió las facilidades, pero no la contactó para reanudar sus quehaceres, sino para ser entrevistada y competir por su antiguo puesto. Indicó que, eventualmente, su puesto se le otorgó a alguien más joven que ella y con menos antigüedad en el empleo.

---

[1] La Sra. Elena Gonzalez Méndez presentó su *Querella* al amparo del procedimiento sumario dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq*.

[2] Específicamente, la señora González Méndez laboraba en el Centro de Servicios Múltiples y de Envejecientes Manantial de Vida de Moca, el cual le pertenece a Acción Social de Puerto Rico, Inc.

Por todo lo anterior, la señora González Méndez argumentó que Acción Social la despidió injustificadamente y discriminó contra ella por motivo de su edad. Expresó que tenía 65 años de edad, que se encontraba capacitada para ejercer las funciones de su antiguo puesto, que fue despedida sin que se siguiera el principio de antigüedad y que su puesto le fue conferido a una persona menor que ella y con menos antigüedad en el empleo. En específico, fundamentó sus alegaciones de despido injustificado en las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976 (Ley Núm. 80), 29 LPRA sec. 185a *et seq.*, y las de discrimen en la Ley Núm. 100 de 30 de junio de 1959 (Ley Núm. 100), 29 LPRA sec. 146 *et seq.*, y en la *Age Discrimination in Employment Act* (ADEA), 29 USCA sec. 621 *et seq.* Así las cosas, solicitó que le otorgaran los remedios dispuestos en las referidas leyes.

Ante ello, Acción Social presentó una *Moción de Desestimación*. En lo pertinente, arguyó que las alegaciones de la señora González Méndez eran inmeritorias, por lo que no tenía derecho a la concesión de un remedio. Para Acción Social, la señora González Méndez fue despedida por justa causa debido al cierre total —por razón de remodelación— del centro en el que laboraba. De igual forma, adujo que la reclamación bajo la Ley Núm. 100 estaba prescrita, pues se instó luego de transcurrido el término dispuesto para ello. Finalmente, sostuvo que el foro primario carecía de jurisdicción para

dirimir la causa de acción al amparo de la ADEA, debido a que la señora González Méndez no agotó los remedios administrativos ante la *Equal Employment Opportunity Commission* (EEOC) o ante la Unidad Anti-discrimen del Departamento del Trabajo y Recursos Humanos (UAD), según lo requiere el estatuto. Por ello, Acción Social solicitó la desestimación con perjuicio de las reclamaciones incoadas por la señora González Méndez. Oportunamente, la señora González Méndez se opuso a esa petición.

Tras varios incidentes procesales, el 18 de marzo de 2014, el Tribunal de Primera Instancia emitió una Sentencia Parcial mediante la cual desestimó las reclamaciones de despido injustificado y discrimen por razón de edad al amparo de la ADEA.[3] Ello pues, concluyó que la señora González Méndez fue despedida por justa causa, ya que Acción Social cerró totalmente sus operaciones por un periodo mayor de 6 meses. Por tanto, resolvió que la señora González Méndez no tenía una causa de acción en virtud de la Ley Núm. 80. Además, el foro primario razonó que la señora González Méndez tenía que agotar los remedios administrativos previo a instar ante el foro judicial su reclamación al amparo de la ADEA. En vista de que ello no ocurrió, determinó que carecía de jurisdicción para adjudicar esa controversia.

---

[3]En la misma fecha, el Tribunal de Primera Instancia emitió una Resolución mediante la cual ordenó que el procedimiento se ventilara por la vía ordinaria.

Ahora bien, dictaminó que no procedía la desestimación total de la reclamación de discrimen por razón de edad bajo la Ley Núm. 100, ya que de las alegaciones bien hechas de la señora González Méndez existía una posible causa de acción por discrimen al momento de competir por su antiguo puesto. En desacuerdo con lo resuelto, la señora González Méndez solicitó reconsideración, pero fue denegada.

Así las cosas, la señora González Méndez acudió ante el Tribunal de Apelaciones. Aquilatados los argumentos de las partes, el 30 de junio de 2014, el foro apelativo intermedio emitió una Sentencia mediante la cual revocó el dictamen recurrido. Razonó que el foro primario incidió al desestimar las causas de acción invocadas por la señora González Méndez, sin auscultar detalladamente las circunstancias del caso. Indicó que de su *Querella* surgían varias alegaciones sobre el alegado despido injustificado que ameritaban ser examinadas.

Asimismo, el Tribunal de Apelaciones concluyó que las reclamaciones de la señora González Méndez justificaban la concesión de un remedio, ya que existía controversia con respecto a si el cierre del centro se efectuó conforme a lo dispuesto en la Ley Núm. 80. Además, señaló que debía dirimirse si existía un acuerdo o una expectativa razonable de que Acción Social re-emplearía a la señora González Méndez en su antiguo puesto, una vez reabriera el centro. Por último, el foro

apelativo intermedio determinó que en una causa de acción al amparo de la ADEA ante nuestros tribunales, no es necesario que se agoten los remedios administrativos. Consecuentemente, dictaminó que no procedía la desestimación de esa reclamación.

Inconforme, Acción Social recurre ante este Tribunal mediante recurso de *certiorari*. En esencia, señala que el Tribunal de Apelaciones incidió al realizar lo siguiente: (1) no reconocer la existencia de justa causa para el despido de la señora González Méndez como consecuencia del cierre -por remodelación- del centro donde ésta laboraba; (2) no reconocer la inexistencia de una causa de acción de discrimen por razón de edad, en la medida en que el despido fue por justa causa; y (3) resolver que la señora González Méndez no tenía que agotar remedios administrativos previo a instar su reclamación judicial al amparo de la ADEA. Examinado el recurso de *certiorari* presentado, el 12 de diciembre de 2014, emitimos una Resolución mediante la cual expedimos el auto.

En su comparecencia ante este Tribunal, Acción Social reproduce los argumentos esgrimidos ante los foros recurridos. Esto es, aduce la existencia de justa causa para el despido de la señora González Méndez, debido a que ocurrió un cierre -por motivo de remodelación- del centro donde ésta laboraba. Amparándose en ello, alega que no tenía la obligación de retener ni re-emplear a sus empleados.

Además, Acción Social argumenta que en la medida en que medió justa causa para el despido, no procede reclamación alguna de despido discriminatorio por razón de edad. A su vez, sostiene que previo a entablar una causa de acción en los tribunales al amparo de la ADEA, es mandatorio presentar un cargo de discrimen ante la EEOC o ante la UAD y observar el trámite administrativo que rige los procedimientos internos. Por todo lo anterior, solicita que revoquemos el dictamen emitido por el Tribunal de Apelaciones.

Por su parte, la señora González Méndez también reproduce los argumentos planteados ante los foros recurridos. En otras palabras, arguye que Acción Social no cumplió con el requisito de cierre total de operaciones, ya que, entre otras cosas, mantuvo abiertos otros centros que tiene en varios municipios de Puerto Rico. Por ende, plantea que Acción Social venía obligada a retenerla o re-emplearla con preferencia a los empleados despedidos, siguiendo un estricto orden de antigüedad. En vista de que su puesto le fue conferido a una empleada de menos edad y con menos antigüedad en el empleo, la señora González Méndez sostiene que el principio de antigüedad fue menoscabado.

De igual forma, la señora González Méndez reitera que Acción Social se comprometió a reinstalarla a su empleo una vez se reanudaran las labores del centro. A su vez, aduce que el ordenamiento vigente no requiere que en

controversias relacionadas con la ADEA el reclamante agote remedios administrativos previo a acudir ante los foros judiciales de nuestra jurisdicción. A la luz de lo anterior, solicita que confirmemos la Sentencia emitida por el foro apelativo intermedio.

Expedido el auto de *certiorari* y con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

Como parte de los esfuerzos por erradicar las prácticas discriminatorias en los lugares de empleo, hace aproximadamente cinco décadas el Congreso Federal promulgó la ADEA, con el propósito expreso de proscribir el discrimen por razón de edad en el empleo. *Véase* 29 USCA sec. 621. La aprobación de este estatuto debe considerarse en el marco de la implementación de la Ley de Derechos Civiles de 1964 que, como sabemos, incluye en su Título VII prohibiciones contra el discrimen en el empleo por motivo de color, raza, religión, sexo u origen nacional. J. Farinacci Fernós, *El discrimen en el empleo por razón de edad y las personas mayores de 65 años*, 79 Rev. Jur. UPR 211, 213 (2010). En términos generales, la ADEA está dirigida a desalentar el discrimen por razón de edad con relación a cualquier término, condición o privilegio de empleo, incluyendo la contratación, despido, ascenso, suspensión, compensación, beneficios, asignaciones de tareas y funciones y adiestramiento. *Véase* 29 USCA sec. 623. De igual modo, bajo la ADEA se

cataloga como una práctica ilegal el tomar represalias contra una persona que se opone a prácticas discriminatorias por motivo de edad en el empleo o que presenta una querella por discriminación, testifica o participa de algún modo en una investigación, proceso o juicio al amparo del estatuto. Íd.

En específico, la ADEA le concede una causa de acción a toda persona de 40 años o más que alegue ser discriminada en el empleo por causa de su edad. 29 USCA sec. 631(a). Sus salvaguardas cobijan tanto a empleados como a solicitantes de empleo. Esta ley aplica a centros de trabajo que afectan el comercio interestatal y emplean a 20 trabajadores o más. 29 USCA sec. 630(b). También incluye a las organizaciones laborales, a las agencias de empleo y al gobierno federal. 29 USCA secs. 623(b) y 623(c). De igual forma, abarca tanto a la empresa privada, así como al gobierno estatal y sus dependencias, ya sean corporaciones públicas o municipios. 29 USCA sec. 630(b).

**A.**

Evidentemente, la ADEA rige en nuestro ordenamiento jurídico. Entre sus disposiciones, ésta le concede jurisdicción concurrente a los tribunales estatales para dirimir controversias a su amparo. *Véase* 29 USCA sec. 626; *véanse*, además, Jacobi v. High Point Label, Inc., 442 F.Supp. 518 (1977); Ibáñez v. Molinos de PR, Inc., 114 DPR 42, 46 (1983). Ahora bien, su ejercicio está

minuciosamente regulado, por lo que requiere una serie de trámites previo a la presentación de una acción judicial.

Ello significa que quien reclama discrimen bajo la ADEA no puede instar una acción judicial a su amparo hasta tanto haya cumplido con ciertos trámites administrativos. Este requerimiento surge de la Sec. 626(d) de la ADEA, la cual dispone, en lo pertinente, que:

> (d)(1) No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—
>
> > (A) within 180 days after the alleged unlawful practice occurred; or
> > (B) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.
>
> (2) Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion. 29 USCA sec. 626(d).

Lo estatuido en la referida sección conlleva la presentación de un cargo de discrimen ante la EEOC[4] *previo* a incoar una demanda contra un patrono en la cual

---

[4]A grandes rasgos, la *Equal Employment Opportunity Commission* (EEOC) es la agencia federal encargada de hacer cumplir los estatutos que prohíben el discrimen en el empleo, entre los cuales, evidentemente, se encuentra la *Age Discrimination in Employment Act* (ADEA).

se alegue violación a la ADEA.[5] Como se puede apreciar, este requerimiento es diáfano y libre de toda ambigüedad.

**B.**

Con relación a los términos para presentar el cargo de discrimen ante la EEOC,[6] la ADEA dispone que, como regla general, éste debe incoarse dentro de los 180 días de acaecido el alegado discrimen. 29 USCA sec. 626(d)(A). En cambio, si el empleado inició su reclamo al amparo o en conjunto con una ley estatal que prohíbe el discrimen en el empleo por razón de edad y existe una agencia o autoridad que vele por su cumplimiento, el plazo para presentar el cargo ante la EEOC se puede extender hasta 300 días de ocurrida la alegada acción discriminatoria. 29 USCA sec. 626(d)(B). Llegado el caso ante la EEOC, se deben seguir las regulaciones allí provistas. Así pues,

---

[5]Tal y como se desprende del portal electrónico de la EEOC, "[a]ll of the laws enforced by EEOC, except for the Equal Pay Act, **require you to file a Charge of Discrimination with us before you can file a job discrimination lawsuit against your employer**". *Véase* https://www.eeoc.gov/employees/charge.cfm. (Énfasis suplido).

[6]Es menester indicar que el empleado también tiene la opción de presentar un cargo ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos (UAD). Ello pues, la UAD tiene un convenio de cooperación (*Worksharing Agreements*) con la EEOC para investigar posibles violaciones a la ADEA. *Véase* J. Farinacci Fernós, *El discrimen en el empleo por razón de edad y las personas mayores de 65 años*, 79 Rev. Jur. UPR 211 (2010).

repasemos sucintamente cuáles son los procedimientos ante la EEOC relevantes a la presente controversia.[7] Veamos.

Recibido el caso, la EEOC notificará prontamente al patrono querellado y, en la eventualidad de que la situación no se resuelva a través de la mediación, iniciará una investigación. En caso de que la investigación refleje que el patrono no incurrió en conducta proscrita por la ADEA, se desestimará el cargo y el empleado obtendrá un aviso de autorización para presentar una acción judicial (*notice of right to sue*).

En cambio, de la EEOC determinar que la querella presentada tiene mérito, intentará conciliar a las partes. Esto es, tratará de persuadir al patrono de eliminar y remediar las alegadas prácticas discriminatorias. Si la conciliación no tiene éxito, la EEOC decidirá si presenta una acción judicial, en nombre del empleado, contra el patrono. En la eventualidad de que la EEOC determine que no presentará la causa de acción ante los tribunales, entregará al empleado el *notice of right to sue*.

Cabe señalar que de la precitada Sec. 626(d) de la ADEA surge que el empleado puede entablar su demanda judicial 60 días después de presentar el cargo de discrimen ante la EEOC. 29 USCA sec. 626(d)(1). Del mismo modo, la ADEA establece que el empleado tiene un término

---

[7]Para conocer los pormenores de los procedimientos ante la EEOC, véase https://www.eeoc.gov/employees/charge .cfm.

de 90 días desde que recibe el *notice of right to sue* para incoar la acción judicial. 29 USCA sec. 626(e).

**III**

Cónsono con lo que antecede, nuestro ordenamiento jurídico también cuenta con legislación dirigida a prohibir prácticas discriminatorias en el empleo por razón de edad. Se trata de la Ley Núm. 100, la cual forma parte de una serie de estatutos estatales que vedan el discrimen en sus diversas modalidades.[8] <u>Díaz v. Wyndham Hotel Corp.</u>, 155 DPR 364, 381 (2001). En ocasión de examinar la Ley Núm. 100, este Tribunal indicó que su génesis respondió al objetivo de erradicar la indeseable práctica social de muchos patronos de discriminar contra los empleados y aspirantes a empleo. <u>Jusino *et als*. v. Walgreens</u>, 155 DPR 560, 574 (2001). Así, la Ley Núm. 100 se aprobó para ofrecer una protección eficaz a los trabajadores contra diversos tipos de discrimen en el ámbito laboral. <u>Mestres Dosal v. Dosal Escandón</u>, 173 DPR 62, 68 (2008).

En síntesis, la Ley Núm. 100 prohíbe el discrimen en el empleo por motivo de edad, raza, color, religión, sexo, orientación sexual, identidad de género, origen social o nacional, condición social, afiliación política, o ideas políticas o religiosas, o por ser víctima o ser

---

[8] *Véanse*, por ejemplo, Ley Núm. 17 de 22 de abril de 1988, 29 LPRA sec. 155 *et seq.*; Ley Núm. 69 de 6 de julio de 1985, 29 LPRA sec. 1321 *et seq.*; Ley Núm. 3 de 13 de marzo de 1942, 29 LPRA sec. 467 *et seq.*

percibida como víctima de violencia doméstica, agresión sexual o acecho, entre otras. *Véase* 29 LPRA sec. 146. A tales efectos, legitima al empleado alegadamente discriminado a entablar una causa de acción por daños y perjuicios contra su patrono. En lo que respecta al caso de autos, del Art. 1 de la Ley Núm. 100 surge expresamente que incurrirá en responsabilidad civil:

> Todo patrono que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su status como empleado, **por razón de edad**, según ésta se define más adelante, [...] del empleado o solicitante de empleo. Íd. (Énfasis suplido).

A diferencia de la ADEA que, como vimos, protege a empleados de 40 años o más, la Ley Núm. 100 no establece un límite específico de edad para que un empleado pueda entablar una reclamación de discrimen por motivo de edad. Díaz v. Wyndham Hotel Corp., *supra*, pág. 380. Ello, toda vez que la Ley Núm. 100 prohíbe discriminar desde la edad mínima en que legalmente se permita trabajar a los menores, sin límite alguno. 29 LPRA sec. 151(1); *véase*, además, Mestres Dosal v. Dosal Escandón, *supra*, pág. 72. De igual forma, y también en contraste con la ADEA, un empleado puede instar una acción judicial al amparo de la Ley Núm. 100, sin necesidad de antes presentar un cargo ante la EEOC o ante la UAD. 29 LPRA sec. 149; *véase*,

además, Farinacci Fernós, *supra*. Esto es, acudir ante esos foros administrativos en casos bajo la Ley Núm. 100 es opcional, no un requisito como surge de la ADEA.

**A.**

Como es sabido, la Ley Núm. 100 contiene una disposición específica en cuanto a la presunción de discrimen. En particular, el Art. 3 establece una presunción controvertible de discrimen en contra del patrono cuando deje de emplear o se rehúse a emplear a una persona sin justa causa. 29 LPRA sec. 148. Empero, dicha presunción no exime al empleado de presentar prueba que establezca los hechos básicos que dan lugar a la presunción. A tales efectos, este Tribunal ha determinado que para activar la presunción de discrimen el empleado deberá: (1) probar que hubo un despido o acción perjudicial; (2) que éste se realizó sin justa causa; y (3) presentar evidencia indicativa de la modalidad de discrimen bajo la cual se reclama.[9] Díaz v. Wyndham Hotel Corp., *supra*, pág. 384; SLG Hernández-Beltrán v. TOLIC, 151 DPR 754, 775-776 (2000). Evidentemente, estas circunstancias o hechos básicos varían dependiendo del contexto en que ocurra la decisión de empleo y a base del tipo o modalidad de discrimen que se alegue. Díaz v. Wyndham Hotel Corp., *supra*, pág. 384.

---

[9] Reiteradamente, este Tribunal ha señalado que esta presunción se activa durante la vista evidenciaria que se celebre, no antes. Díaz v. Wyndham Hotel Corp., 155 DPR 364, 384 (2001); SLG Hernández-Beltrán v. TOLIC, 151 DPR 754, 774 (2000).

En lo concerniente a la controversia que nos ocupa, este Tribunal ha manifestado que en reclamaciones por despido discriminatorio por razón de edad, el empleado tiene que presentar prueba que tienda a establecer, por ejemplo, que: (a) pertenece a la clase protegida por el estatuto; o (b) que estaba cualificado para ejercer el puesto que ocupaba; o (c) que fue despedido, o (d) que fue sustituido por una persona más joven; es decir, algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual reclama. Íd., págs. 389-390. En el caso <u>Díaz v. Wyndham Hotel Corp.</u>, *supra*, advertimos que el empleado no tiene que probar todos y cada uno de los mencionados elementos, ya que, de requerírsele, se le estaría exigiendo que cumpla con una obligación procesal que no le corresponde llevar a cabo bajo las disposiciones de la Ley Núm. 100. Íd., pág. 390.

Una vez el empleado cumple con esa primera fase, surge la presunción de discrimen contra el patrono, por lo que el peso de la prueba recae sobre éste. Íd.; <u>SLG Hernández-Beltrán v. TOLIC</u>, *supra*, pág. 775. Si el patrono no presenta prueba, se considera que el empleado probó su caso de discrimen, restando solo la presentación de la prueba sobre los daños. <u>SLG Hernández-Beltrán v. TOLIC</u>, *supra*, pág. 775. En caso de que el patrono derrote la presunción, le corresponde al empleado presentar prueba dirigida a establecer la existencia del discrimen.

Díaz v. Wyndham Hotel Corp., *supra*, pág. 390; SLG Hernández-Beltrán v. TOLIC, *supra*, pág. 775.

**IV**

Por otra parte, sabido es que en nuestro ordenamiento jurídico la Ley Núm. 80 es el principal estatuto que protege al empleado que ha sido privado injustificadamente de su trabajo y, a su vez, desalienta este tipo de despido al imponerle al patrono el pago de una indemnización. En ese sentido, presenta dos propósitos primordiales. Por un lado, tiene un fin coercitivo pues pretende, mediante sanción, desalentar la práctica de despedir a empleados sin que medie justa causa. Romero *et als*. v. Cabrer Roig *et als*., 191 DPR 643, 649-650 (2014); Reyes Sánchez v. Eaton Electrical, 189 DPR 586, 596 (2013); Rivera Figueroa v. The Fuller Brush Co., 180 DPR 894, 906 (2011); Jusino *et als*. v. Walgreens, *supra*, pág. 571. Por otro lado, tiene un objetivo reparador, ya que provee a los empleados remedios consustanciales a los daños causados por despidos injustificados.[10] Reyes Sánchez v. Eaton Electrical, *supra*, pág. 596; Feliciano Martes v. Sheraton, 182 DPR 368, 379 (2011); Jusino *et als*. v.

---

[10]En vista de su propósito reparador, en reiteradas ocasiones este Tribunal ha indicado que la Ley Núm. 80 debe ser interpretada de manera liberal y favorable al empleado. Romero *et als*. v. Cabrer Roig *et als*., 191 DPR 643, 653 (2014); Whittenburg v. Col. Ntra. Sra. Del Carmen, 182 DPR 937, 951 (2011); Rivera Figueroa v. The Fuller Brush Co., 180 DPR 894, 906 (2011); Jusino *et als*. v. Walgreens, 155 DPR 560, 571 (2001).

Walgreens, *supra*, pág. 571; Beauchamp v. Holsum Bakers of PR, 116 DPR 522, 526 (1985).

En particular, el Art. 1 de la Ley Núm. 80 dispone, en lo pertinente, que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo que fuere despedido sin justa causa, tendrá derecho a recibir de su patrono una indemnización. 29 LPRA sec. 185a; Romero *et als*. v. Cabrer Roig *et als*., *supra*, pág. 650; Whittenburg v. Col. Ntra. Sra. Del Carmen, 182 DPR 937, 949-950 (2011); Feliciano Martes v. Sheraton, *supra*, pág. 380; Díaz v. Wyndham Hotel Corp., *supra*, pág. 375. De esta forma, la Ley Núm. 80 le garantiza a todo empleado que trabaje mediante remuneración y que sea contratado por tiempo indeterminado, una compensación por parte de su patrono, además del sueldo que hubiere devengado, en caso de ser despedido sin justa causa. 29 LPRA sec. 185a; Rivera Figueroa v. The Fuller Brush Co., *supra*, pág. 906. Esta compensación es conocida comúnmente como la mesada y su cuantía depende del tiempo durante el cual el empleado ocupó su puesto y del sueldo que devengaba. *Véase* 29 LPRA sec. 185a; *véanse*, además, Romero *et als*. v. Cabrer Roig *et als*., *supra*, pág. 650; Whittenburg v. Col. Ntra. Sra. Del Carmen, *supra*, pág. 950; Rivera Figueroa v. The Fuller Brush Co., *supra*, pág. 905.

Aunque la Ley Núm. 80 no define con precisión lo que constituye un despido injustificado, enumera unos supuestos según los cuales se justifica el despido de un

empleado. Esto, con el propósito de determinar cuándo el patrono puede ejercer dicha prerrogativa, sin tener que satisfacer el remedio dispuesto en la referida ley.[11] Díaz v. Wyndham Hotel Corp., *supra*, pág. 377. A esos efectos, el Art. 2 de la Ley Núm. 80 establece, en lo pertinente, lo que se entenderá por justa causa para el despido, a saber: (1) que el empleado siga un patrón de conducta impropia o desordenada; (2) la actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad; (3) violación reiterada por el empleado de las reglas y reglamentos establecidos, siempre que se le haya suministrado oportunamente copia escrita de éstos; (4) cierre total, temporero o parcial de las operaciones del establecimiento; (5) cambios tecnológicos o de reorganización, así como de estilo, diseño o naturaleza del producto que se produce o maneja y los cambios en los servicios rendidos al público; y (6) reducciones en empleo que se hacen necesarias debido a

---

[11]Recuérdese que la Ley Núm. 80 establece una presunción de que el despido fue injustificado y que le corresponde al patrono rebatirla; es decir, probar que el despido estuvo justificado. 29 LPRA sec. 185k; *véase*, además, Feliciano Martes v. Sheraton, 182 DPR 368, 385 (2011); Rivera Figuera v. The Fuller Brush Co., *supra*, págs. 906-907. Para disfrutar de la aludida presunción, el empleado tiene que demostrar que cumple con los requisitos de la causa de acción, a saber: (1) que fue empleado de comercio, industria u otro negocio; (2) que su contrato era por tiempo indeterminado; (3) que recibía remuneración por su trabajo; y (4) que fue despedido de su puesto. Rivera Figuera v. The Fuller Brush Co., *supra*, pág. 907.

una disminución en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.[12] 29 LPRA sec. 185b.

Es menester resaltar que los primeros tres supuestos de justa causa para el despido son conductas atribuibles al empleado, mientras que los últimos tres se le atribuyen al patrono. Romero *et als.* v. Cabrer Roig *et als.*, *supra*, pág. 651-652; Reyes Sánchez v. Eaton Electrical, *supra*, pág. 597; Whittenburg v. Col. Ntra. Sra. Del Carmen, *supra*, pág. 950; Díaz v. Wyndham Hotel Corp., *supra*, pág. 376. Con relación a estos últimos, el patrono tiene el deber de cumplir con el orden de retención preferente que establece el Art. 3 de la Ley Núm. 80. 29 LPRA sec. 185c. Es decir, en caso de despidos por razones atribuidas al patrono, éste deberá retener a los empleados con más antigüedad en la clasificación ocupacional en la cual se dispone a efectuar los despidos, siempre y cuando subsistan puestos vacantes u ocupados por empleados con menor antigüedad. Reyes Sánchez v. Eaton Electrical, *supra*, pág. 599.

---

[12]Del mismo modo, el Art. 2 de la Ley Núm. 80 dispone que no constituirá un despido justificado aquél que se hace por capricho del patrono o sin razón vinculada con el buen y normal funcionamiento del establecimiento. 29 LPRA sec. 185b. Tampoco será justa causa para el despido la colaboración o expresiones hechas por el empleado, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo, cuando dichas expresiones no sean difamatorias ni constituyan divulgación de información privilegiada. Íd.

**A.**

En la *Guía Revisada para la Interpretación y Aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, revisada el 30 de junio de 2014* (Guía Revisada),[13] promulgada por el Departamento del Trabajo y Recursos Humanos, se examinan las circunstancias que constituyen justa causa para el despido. En lo que atañe a la controversia que nos ocupa, ésta establece que la responsabilidad y obligación del patrono en caso de cierre de un establecimiento debe examinarse a base de varias circunstancias, a saber: si el cierre es: total y permanente; total y temporero; parcial y permanente; o parcial y temporero. Guía Revisada, pág. 56.

En cuanto al cierre total y permanente, la Guía Revisada indica que es aquél que se prolonga por más de 6 meses y en el cual el patrono no está obligado a cumplir con las disposiciones de la Ley Núm. 80. Esto, ya que al cerrar no retiene ni re-emplea a ningún trabajador. Íd.

Por su parte, el cierre total y temporero ocurre cuando el establecimiento paraliza sus operaciones totalmente y no emplea a ningún trabajador por un término que no exceda de 6 meses. Íd. En vista de que el patrono no retiene empleados, no está obligado a cumplir con las disposiciones de la Ley Núm. 80. Íd. Sin embargo, el

---

[13]Aunque al momento de los hechos de este caso existía una *Guía Revisada* anterior, las disposiciones con respecto a la responsabilidad y obligación del patrono en caso de cierre de un establecimiento son similares a las establecidas en la *Guía Revisada* más reciente.

patrono está obligado a re-emplear con preferencia a los empleados despedidos siguiendo un estricto orden de antigüedad, si es que surgen puestos dentro de su clasificación ocupacional que pueden ser desempeñados por éstos. Íd. De no hacerlo, los empleados que no sean re-empleados preferentemente tienen derecho a reclamar los remedios que concede la Ley Núm. 80, sin que la justificación original para el despido le sirva al patrono como defensa. Íd.

De otra parte, la Guía Revisada define el cierre parcial y permanente como aquél en el cual el patrono descontinúa permanentemente una parte de sus operaciones y, por ende, solo una parte de sus empleados se ven afectados. Íd. En estas circunstancias, el patrono está obligado a retener preferentemente a los empleados afectados con más antigüedad en la empresa. Íd. Si el patrono no sigue esta norma, dichos empleados pueden reclamar el remedio que concede la Ley Núm. 80. Íd., pág. 57.

Finalmente, el cierre parcial temporero se refiere a cuando se descontinúan ciertas operaciones de un establecimiento por un periodo menor de 6 meses, permaneciendo otras en funcionamiento. Íd. En este caso también se habla de reducción parcial en el empleo que ocurre cuando se reduce el número de empleados que se desempeñan en la empresa, sin descontinuar sus operaciones, pero reduciendo el volumen o magnitud de las

mismas. Según la Guía Revisada, ambas situaciones reciben un tratamiento similar bajo la Ley Núm. 80. Íd. En cuanto a ello, se aclara que este tipo de cierre debe examinarse a base de dos supuestos, a saber: (1) cuando el cierre parcial temporero es por un plazo de 3 meses o menos; y (2) cuando éste se prolonga por más de 3 meses, pero menos de 6.[14] Íd.

**V**

Por último, es oportuno recordar que la Regla 10.2 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 10.2, establece las defensas mediante las cuales una parte puede solicitar la desestimación de la causa de acción que se insta en su contra. Esto, cuando es evidente que a base de las alegaciones formuladas en la demanda, alguna de las defensas afirmativas prosperará. Trans-Oceanic Life Ins. v. Oracle Corp., 184 DPR 689, 701 (2012). De esta forma, la precitada regla dispone que la parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; **(5) dejar de exponer una reclamación que**

---

[14]Para una exposición en detalle de las responsabilidades y obligaciones del patrono con relación al cierre parcial temporero, véase *Guía Revisada para la Interpretación y Aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, revisada el 30 de junio de 2014*, págs. 57-58.

**justifique la concesión de un remedio**; y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2.

En lo que concierne a esta controversia, nuestros pronunciamientos jurisprudenciales establecen que al resolver una solicitud de desestimación fundamentada en que se deja de exponer una reclamación que justifica la concesión de un remedio, los tribunales deben tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. Accurate Sols. v. Heritage Environmental, 193 DPR 423, 433 (2015); Torres, Torres v. Torres *et al.*, 179 DPR 481, 501 (2010); Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409, 428 (2008); Colón v. Lotería, 167 DPR 625, 649 (2006); Roldán v. Lutrón, SM, Inc., 151 DPR 883, 889 (2000); Harguindey Ferrer v. UI, 148 DPR 13, 30 (1999); Pressure Vessels PR v. Empire Gas PR, 137 DPR 497, 504-505 (1994). A su vez, vienen llamados a interpretar las alegaciones en forma conjunta y liberal, y de la manera más favorable a la parte demandante. Torres, Torres v. Torres *et al.*, *supra*, pág. 502; Aut. Tierras v. Moreno & Ruiz Dev. Corp., *supra*, págs. 428-429; Colón v. Lotería, *supra*, pág. 649; Roldán v. Lutrón, SM, Inc., *supra*, pág. 890; Pressure Vessels PR v. Empire Gas PR, *supra*, pág. 505. A esos efectos, los foros judiciales deben razonar si a la luz de la situación más favorable al demandante, y resolviendo las dudas a favor de éste, la demanda es suficiente para constituir una reclamación válida. Aut.

Tierras v. Moreno & Ruiz Dev. Corp., *supra*, pág. 429; Colón v. Lotería, *supra*, pág. 649; Pressure Vessels PR v. Empire Gas PR, *supra*, pág. 505.

Por tanto, de ordinario, se debe conceder la desestimación cuando existan circunstancias que permitan a los tribunales determinar, sin ambages, que la demanda carece de todo mérito o que la parte demandante no tiene derecho a obtener algún remedio. Torres, Torres v. Torres *et al.*, *supra*, pág. 502.

Expuesto el marco doctrinal, procedemos a resolver la controversia que nos atañe.

**VI**

Para recapitular, en este caso la señora González Méndez presentó una *Querella* contra Acción Social en la cual alegó, en esencia, que fue despedida injustificadamente y discriminada por motivo de su edad. Fundamentó sus alegaciones en la Ley Núm. 80, Ley Núm. 100 y la ADEA. Ante ello, Acción Social solicitó la desestimación de las reclamaciones, bajo el argumento de que éstas no justificaban la concesión de un remedio. Adujo que existía justa causa para el despido de la señora González Méndez, que la causa de acción al amparo de la Ley Núm. 100 estaba prescrita y que el foro judicial carecía de jurisdicción para dirimir la reclamación bajo la ADEA porque no se agotaron los remedios administrativos.

Ponderados los argumentos de las partes, el Tribunal de Primera Instancia desestimó las reclamaciones de despido injustificado y discrimen, pues entendió que existía justa causa para el despido de la señora González Méndez. Asimismo, desestimó la causa de acción al amparo de la ADEA, ya que determinó que era mandatorio agotar los remedios administrativos. Ahora bien, concluyó que la señora González Méndez tenía una reclamación válida de discrimen por razón de edad al momento del reclutamiento.

En desacuerdo, la señora González Méndez acudió ante el Tribunal de Apelaciones. Tras evaluar la controversia, dicho foro revocó la Sentencia Parcial recurrida. Razonó que no procedía la desestimación de la reclamación de despido injustificado debido a que de la *Querella* incoada por la señora González Méndez surgían varias reclamaciones que justificaban la concesión de un remedio. En ese sentido, determinó que debía dirimirse si el cierre del centro se realizó en armonía con la Ley Núm. 80 y si existía un acuerdo o una expectativa razonable de que Acción Social re-emplearía a la señora González Méndez en su antiguo puesto. Además, dictaminó que no era necesario agotar los remedios administrativos previo a instar una acción judicial al amparo de la ADEA. Por tanto, resolvió que tampoco procedía la desestimación de esta reclamación.

Inconforme, Acción Social recurrió ante este Tribunal y, esencialmente, reprodujo los argumentos

planteados ante los foros recurridos, a saber: (1) que el despido de la señora González Méndez se efectuó por justa causa; (2) que al mediar justa causa se hace inmeritoria la reclamación de discrimen; y (3) que debían agotarse los remedios administrativos antes de presentar una acción judicial al amparo de la ADEA. Oportunamente, la señora González Méndez compareció ante este Tribunal y también expuso argumentos similares a los esgrimidos ante los foros recurridos. Delineada la controversia, resolvemos.

**A.**

En primer lugar, este caso nos exige determinar si previo a instar una acción judicial al amparo de la ADEA es requisito presentar un cargo ante la EEOC o ante la UAD. Con relación a ello, la señora González Méndez argumenta que la normativa vigente no impone tal requisito para acudir ante nuestros foros judiciales. No le asiste la razón. Como vimos, la Sec. 626(d) de la ADEA es diáfana en cuanto al particular. Por tanto, resolvemos que para que el tribunal pudiera dirimir la causa de acción instada al amparo de esta ley, resultaba imperativo que la señora González Méndez, *antes* de incoar esa reclamación judicial, acudiese ante la EEOC o ante la UAD y cumpliese con las regulaciones allí establecidas. No hay razón ni fundamento para adoptar un tratamiento distinto en nuestro ordenamiento jurídico. Incidió el Tribunal de Apelaciones al concluir lo contrario. En

vista de que la señora González Méndez no cumplió con ese trámite administrativo esencial previo a instar su acción judicial bajo la ADEA, procede la desestimación de esa reclamación.

Disipada esa controversia de umbral, resta por resolver si, conforme a los requisitos jurisprudenciales para examinar las solicitudes de desestimación, procedía la desestimación de las reclamaciones de despido injustificado y de discrimen por razón de edad bajo la Ley Núm. 100. Al evaluar la *Querella* de la señora González Méndez de la manera más liberal y favorable y tomar como ciertos los hechos bien alegados en ésta, es forzoso concluir que sus reclamaciones podrían justificar la concesión de un remedio. Primeramente, y según la normativa expuesta, existe controversia con relación a los pormenores del cierre del centro donde laboraba la señora González Méndez. Es decir, el tipo de cierre, a la luz de las operaciones de la entidad particular y a lo que dispone la Ley Núm. 80 y la Guía Revisada para constituir justa causa para el despido. Del mismo modo, existe controversia con respecto a si hubo un acuerdo o expectativa razonable de que Acción Social re-emplearía o retendría a la señora González Méndez al reabrir el centro.

Según los hechos bien alegados en la *Querella*, si éstos fueran probados, Acción Social podría ser responsable por sus actuaciones y la señora González

Méndez tendría derecho a ser indemnizada. Así pues, recuérdese que al momento de examinar las alegaciones para resolver las mociones de desestimación "se debe ser sumamente liberal concediéndose 'únicamente cuando de los hechos alegados no puede concederse remedio alguno a favor del demandante'". Torres, Torres v. Torres *et al.*, *supra*, pág. 502 (citando a R. Hernandez Colón, Derecho Procesal Civil, 4ta ed., San Juan, Ed. LexisNexis, 2007, pág. 231). Por consiguiente, resolvemos que no procede la desestimación de las reclamaciones de despido injustificado y de discrimen por motivo de edad al amparo de la Ley Núm. 100 instadas por la señora González Méndez. Actuó correctamente el foro apelativo intermedio al así determinarlo.

## VII

En virtud de los fundamentos que anteceden, confirmamos la determinación emitida por el Tribunal de Apelaciones en cuanto a que no procedía la desestimación de las reclamaciones por despido injustificado y discrimen por razón de edad al amparo de la Ley Núm. 100 incoadas por la señora González Méndez. Por otra parte, revocamos el dictamen del foro apelativo intermedio en lo referente a que la ADEA no requiere que se presente una reclamación administrativa previo a acudir al foro judicial. Por consiguiente, procede la desestimación de la causa de acción al amparo de la ADEA.

A la luz de lo anterior, remitimos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos ulteriores de forma compatible con lo aquí resuelto.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Elena González Méndez

Recurrida

     v.                                  CC-2014-679      Certiorari

Acción Social de Puerto Rico,
Centro de Envejecientes Manantial
de Vida; Aseguradora X, Fulano de
Tal y Sutano de Tal

    Peticionarios


SENTENCIA

San Juan, Puerto Rico, a 8 de agosto de 2016.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirma la determinación emitida por el Tribunal de Apelaciones en cuanto a que no procedía la desestimación de las reclamaciones por despido injustificado y discrimen por razón de edad al amparo de la Ley Núm. 100 incoadas por la señora González Méndez. Por otra parte, se revoca el dictamen del foro apelativo intermedio en lo referente a que la ADEA no requiere que se presente una reclamación administrativa previo a acudir al foro judicial. Por consiguiente, procede la desestimación de la causa de acción al amparo de la ADEA.

A la luz de lo anterior, se remite el caso al Tribunal de Primera Instancia para la continuación de los procedimientos ulteriores de forma compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.


                               Juan Ernesto Dávila Rivera
                           Secretario del Tribunal Supremo